UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

XAVIER BENJAMIN, for himself and
on behalf of those similarly situated,

    Plaintiff,

vs.

CASE NO.: 3:17-cv-00457-BJD-MCR

RIGHT PATH BEHAVIORAL
HEALTH SERVICES, LLC, a Limited
Liability Company; and DON
JACKSON, Individually,

    Defendants.
_____/

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND ENTRY OF AN ORDER OF DISMISSAL WITH PREJUDICE
AND INCORPORATED MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Plaintiff XAVIER BEJAMIN ("Plaintiff") and Defendants RIGHT PATH BEHAVIORAL HEALTH SERVICES, LLC, and Charles Jackson ("Defendants") (collectively, the "Parties") jointly move the Court for approval of the settlement agreement entered into in this action (the "Agreement" or the "Settlement Agreement") and entry of an order of dismissal with prejudice. The parties have exchanged voluminous pay and time records, Plaintiff and Defendants have responded to interrogatories and requests for production, and the Parties have engaged in extensive settlement negotiations, including a full-day mediation with an experienced mediator. The Parties planned to conduct depositions if the case did not resolve. As a result, the Parties have agreed that the terms reflected in the Agreement are mutually satisfactory and represent a reasonable compromise of the claims of the Plaintiff and Opt-in Plaintiffs (as that term is defined below, and collectively referred to as "Plaintiffs" in this motion) for the claims

asserted, in light of the proof required and Defendants' defenses to Plaintiffs' claims. The Court's approval and entry of an order of dismissal with prejudice will consummate the Agreement between the Parties. The grounds for this joint motion are set forth below.

## II.  FACTUAL BACKGROUND

1. Plaintiff's Complaint was filed on April 19, 2017, alleging that Defendants violated the FLSA by misclassifying Plaintiff and others similarly situated as independent contractors and by not paying them time and one-half of their regular rate for overtime hours worked. Plaintiff sought the full range of remedies afforded under the FLSA.

2. Plaintiff and Defendants dispute whether collective action certification is appropriate.

3. In this matter, Plaintiff successfully moved for collective certification, and the Court ordered that notices be sent to other employees employed in the same position as Plaintiff, for the three years prior to the filing of the Complaint. Such notices were sent on April 11, 2018, with reminder notices sent on June 4, 2018. The potential collective encompassed nine individuals who were not related to the individual Defendant. Of this group, (2) individuals opted-in to the litigation before the notices were sent, and two (2) additional individuals opted-in to the litigation during the opt-in period, for a total of Four (4) Opt-In Plaintiffs ("Opt-In Plaintiffs").

4. The parties have a bona fide dispute under the FLSA. Defendants assert that Plaintiff was an independent contractor and not an employee. Consequently, Defendants maintain Plaintiff did not enjoy the protections of the FLSA. Plaintiff, on the other hand, claims that he was misclassified as an independent contractor and was covered by the provisions of the FLSA. Even if Plaintiff and Opt-ins were employees, the parties also disputed the amount of

compensation they would be due under the FLSA. Moreover, Right Path Transportation, the entity which contracted with Plaintiff and Opt-ins, is a defunct entity which could not be served. Defendant Right Path Behavioral Health denied that it was the employer of Plaintiff or the Opt-Ins, and thus denied liability. Defendant Jackson denied any potential liability for any time period following his sale of Right Path Transportation in October 2016.

5. Moreover, Defendants disputed Plaintiff and Opt-ins' ability to recover liquidated damages in this matter, as they claimed to have secured legal advice supporting their classification of Plaintiff and Opt-ins as Independent Contractors.

6. The Consent to Become a Party Plaintiff, executed by each of the Opt-In Plaintiffs ("Opt-In Form"), provided that the Opt-In Plaintiff agreed to be bound by any settlement agreement reached in the collective action. It states as follows:

> By my signature below, I hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act action in my name and on my behalf by the above-representative Plaintiff and designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with Plaintiff's counsel concerning Plaintiff's attorney fees and costs, and all other matters pertaining to this lawsuit. In the event this action gets conditionally certified and then decertified, I authorize Plaintiff's counsel to re-file my claims in a separate or related action against Defendants

7. Through their respective counsel, the Parties engaged in extensive settlement negotiations and Defendants shared voluminous data with Plaintiff relating to the pay and time records of Plaintiff and the Opt-in Plaintiffs. Plaintiff's counsel engaged in an extensive analysis of these documents, interviewed all of the collective members, prepared responses to discovery requests, and determined the maximum exposure with respect to Plaintiff and each Opt-in Plaintiff's claims. At the conclusion of several months of arms-length negotiations, including a full day of mediation before experienced employment mediator, G. Michael Burnett, the Parties

reached an agreement as to the material terms of the settlement. The terms of the settlement reached between the Parties were memorialized in the Agreement attached hereto as **Exhibit A**. Although Defendants vehemently deny any liability in this matter, including a denial that Plaintiff or Opt-ins were even employees entitled to the protections of the FLSA, in the interest of resolution, and in light of the uncertainties of litigation, Defendants agreed as part of the settlement to pay each Plaintiff and Opt-In Plaintiff 75% of the wages and liquidated damages that each claimed to be owed to him/her. Undersigned counsel spoke with each collective member prior to and during the mediation to explain the potential damages, and offers during the mediation. No agreement was finalized prior to getting explicit consent from each collective member as to all terms of the Agreement. Plaintiff and all opt-in Plaintiffs have individually signed the Agreement.

8. Finally, the Parties separately negotiated the attorneys' fees to be paid. The amount negotiated to be paid to Plaintiffs' attorneys is $14,175.00. Including the costs of mediation, which will be paid out of these fees, the recoverable costs incurred in this matter are over $2,500.00.

9. Based upon the authorizations and agreements provided in their Opt-In Forms, the Opt-In Plaintiffs have agreed to be bound by any resolution reached in this matter. Thus, once approved by the Court as fair and reasonable, the payments listed in the settlement agreement will be distributed to the collective.

10. Courts have recognized that approval of FLSA settlements is warranted when the settlement is fair and reasonable. Thus, here, the Court may approve the Parties' Settlement Agreement. In this case, there were multiple disputed issues among the Parties, and the

settlement negotiated and reached by the Parties nonetheless provides all of those who are releasing their claims with relief that is reasonable in light of the claims raised and proof offered.

As such, the Parties now file this joint motion requesting the Court to approve the Agreement entered into by the Parties in this action and to dismiss this action with prejudice.

## MEMORANDUM OF LAW

### A. THIS COURT SHOULD APPROVE THE PARTIES' SETTLEMENT AGREEMENT BECAUSE THE AGREEMENT IS A REASONABLE COMPROMISE OF CLAIMS.

In the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, in reaching a settlement, the parties may present the district court with a proposed settlement, and the district court may enter an order approving the fairness of the settlement, and dismissing the case. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also Sculte, Inc. v. Gandi*, 328 U.S. 108 (1946); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). In detailing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354. Thus, when presented with a motion to approve a settlement agreement, the district court must scrutinize the settlement to ensure that it is a fair

and reasonable resolution of a bona fide dispute. *See Roldan v. Windhover Ass'n, Inc.*, No. 6:06-cv-1097-0r1-28JGG, 2007 WL 778958, at *3 (M.D. Fla. Mar. 9, 2007) (recognizing that, when determining whether a settlement is fair and reasonable, courts should consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel (citing *Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

Here, the Parties' Settlement Agreement is fair and reasonable because it involves disputed claims, and because it was reached after the Parties exchanged extensive documents and information bearing on the Plaintiffs' claims, after the Parties received legal advice from their counsel who analyzed the legal and factual issues involved in the case, and after the Parties negotiated a mutually satisfactory resolution of the disputed claims including through a full day of mediation before an experienced mediator. Each side had produced affidavits supporting its claims and defenses in the lawsuit. Based on the disputed testimony, Plaintiffs faced a realistic possibility that even if successful on their claims, a jury might award damages for only a portion of the damages Plaintiffs claimed, or no damages at all. Defendant, too, faced the possibility that Plaintiffs would be awarded all of the damages claimed. As such, the certain relief afforded by this settlement, prior to further extensive discovery, and without the perils and uncertainties of continued litigation, is in the best interests of all Parties to this matter.

> **i. The Parties' Settlement Is Fair and Reasonable Given the Disputed Issues in the Case and the Considerable Expense of Additional Litigation.**

Because of the disputed issues involved in proving or refuting the Plaintiffs' claims, as described above, the Parties agreed that there was significant risk, on both sides, in proceeding

with litigation.  Defendants have agreed to pay an amount that provides each Plaintiff 75% of his/her wages and liquidated damages claimed.  This is a reasonable compromise in light of Defendants' position that the Plaintiffs were independent contractors, and that Defendants had secured legal advice which could reduce or avoid liquidated damages in this matter.

When considering whether to approve a settlement under the FLSA, the Court should keep in mind the "strong presumption" in favor of finding a settlement fair. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977); *see also Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 WL 219981, *2 (M.D. Fla. Jan. 26, 2007).  In other words, a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995), *citing Cotton,* 559 F.2d at 1330.

      ii.  **The Parties' Settlement Agreement Is the Product of Detailed Analysis and Negotiation, Not Collusion.**

After the Parties had an opportunity to review each other's documents, their attorneys began negotiating a resolution of the FLSA claims.  Defendant initially offered less than $5,000 to settle the claims of all 5 Plaintiffs.  The Parties' counsel engaged in negotiations, including a full day of mediation with an experienced mediator, based upon their independent calculations of the value of the claims and the evidence supporting their respective positions.  As a result of the prolonged negotiations following this initial positioning, Defendants have agreed to pay significantly more than they initially offered to these five individuals, and to pay Plaintiffs' attorneys' fees separately, in an amount that did not reduce the recovery to any Plaintiff.  By all accounts, the Parties have agreed to a fair and reasonable settlement amount, and, likewise, a fair and reasonable allocation of the settlement amount.  The settlement allocation was adjusted to reflect the Parties' belief that additional litigation is likely to be protracted and expensive, given

both the claims and defenses that have been asserted and the significant and costly discovery that had taken place through the date of mediation.

The Plaintiffs have been independently represented and counseled by their attorney, Angeli Murthy of Morgan & Morgan, P.A., who was obligated to and did, in fact, vigorously represent them throughout the litigation and the settlement process. Through their Opt-In Forms, each Opt-In Plaintiff gave full authority to Named Plaintiff and Morgan & Morgan to settle or resolve the claims in this lawsuit, and to be bound by a collective action settlement of this lawsuit that is approved by Morgan & Morgan and approved by this Court as fair and reasonable. Additionally, each Opt-In Plaintiff will affirmatively and voluntarily agree to the Release of his or her wage claims, by executing the approved release. Thus, there is no suggestion that the settlement is the product of collusion. Rather, the settlement is based on detailed analysis, negotiation, and legal advice. In light of the uncertainty of success and the considerable expense of further litigation, the Parties' settlement is entirely fair and reasonable and should be approved by this Court.

### B. THE PARTIES AGREE THAT PLAINTIFFS' COUNSEL'S FEES ARE REASONABLE.

The FLSA has a fee-shifting provision which provides that reasonable attorneys' fees and costs should be awarded to a prevailing party. 29 U.S.C. § 216(b). The federal courts have long recognized the importance of plaintiffs' right to recover attorneys' fees under the FLSA. *See, e.g., Shelton v. Ervin,* 830 F.2d 182, 183 (11th Cir. 1987) (FLSA's fee recovery provision is not collateral to the merits of an FLSA lawsuit, but rather, is an "integral part of the merits" of the lawsuit). A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).

Here, the Parties have negotiated the amount of attorneys' fees separately from the amounts to be paid to the Plaintiffs in the Settlement and only after agreeing to the amounts of Plaintiff and each Opt-in Plaintiff's settlement, and the Parties agree that the amount of fees paid to the Plaintiffs' counsel under the Parties' Agreement is fair and reasonable.  As such, it is appropriate for the Court to approve the Agreement.  *See Bonetti v. Embarq Mgmt. Co.*, 715 F.Supp.2d 1222 (M.D. Fla. 2009) (the court can ensure "that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered[,]" and "[i]f these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."  As such, " if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel"); *Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 WL 3858491, at *3-4 (M.D. Fla. Dec. 26, 2006) (The FLSA does not require the court to assess the fairness of an *agreed* payment of attorneys' fees in settling an individual action).  Here, there has been a reasonable compromise, and Plaintiff's counsel's fee was negotiated separately and, thus, the Court may approve the Agreement without delay.

As undersigned counsel is aware that this Court prefers to examine counsel's fee records when determining reasonableness of attorneys' fees, even where the amounts are negotiated separately, Plaintiff's counsel's fee records are attached hereto as Exhibit B. As the Court can see, the costs in this matter, even excluding all costs outside of filing fees, service of process and mediation, are over $2,500.00, and counsel spent over 50 hours litigating this matter to a successful conclusion. As such, Plaintiffs respectfully submit, without objection from Defendant, that the fees and costs of less than $15,000.00 are reasonable.[1]

## CONCLUSION

WHEREFORE, the Parties respectfully submit that this Court should approve the Parties' Settlement Agreement, and dismiss this action with prejudice, with each party to bear its own attorney's fees except as agreed to by the Parties in writing.

Respectfully submitted this 17th day of September, 2018.

| | |
|---|---|
| **/s/ Angeli Murthy** | **/s/ William S. Mann** |
| Angeli Murthy, Esquire | CHARLES A. DORMINY, ESQ. |
| Florida Bar No.: 088758 | Georgia Bar No. 001315 |
| amurthy@forthepeople.com | **[Admitted pro hac vice]** |
| MORGAN & MORGAN, P.A. | WILLIAM S. MANN, ESQ. |
| 600 N. Pine Island Road | Georgia Bar No. 964223 |
| Suite 400 | **[Admitted pro hac vice]** |
| Plantation, Florida 33324 | HALL BOOTH SMITH, P.C. |
| Telephone: (954) 318-0268 | 3528 Darien Highway, Suite 300 |
| Facsimile: (954) 327-3016 | Brunswick, Georgia 31525 |
| *Trial Attorneys for Plaintiff* | Tel:  (912) 554-0093 |
| | Fax: (912) 554-1973 |
| | cdorminy@hallboothsmith.com |
| | wmann@hallboothsmith.com |

---

[1] Plaintiffs' counsel's hourly rate is $425 per hour, but the effective hourly rate reflected in the Parties' compromise is significantly lower. Ordinarily, if submitting a fee petition, counsel would submit an affidavit attesting to her significant experience and other justification as to the rate, and has done so in at least one prior case before this Court. *See Smith v. Crawford & Co.*, No. 3:18-cv-00286-HLA-MCR, Doc. 27 (M.D. Fla. July 25, 2018). However, in *Smith* this Court made clear that, under the circumstances presented here, where fees were negotiated separately, the Court does not conduct an in-depth analysis, and rather simply looks to see whether there is anything facially unreasonable regarding the fees. *Id.* at Doc. 29 (RICHARDSON, M.J.). If the Court has any questions regarding the reasonableness of the effective rate of less than $250 per hour that these records reflect, undersigned counsel is happy to submit an affidavit detailing her experience and supporting the rate.

*Attorneys for Defendants Right Path
Behavioral Health Services, Inc. and
Don Jackson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the CM/ECF system on this 17th day of September, 2018, which I understand will send notification of same to all counsel of record.

/s/ ANGELI MURTHY
ANGELI MURTHY, ESQ.